■ In the Matter of COMPTROLLER OF THE CITY OF NEW YORK, Respondent-Appellant, v MAYOR OF THE CITY OF NEW YORK et al., Appellants-Respondents, and SNAPPLE BEVERAGE CORP., Respondent. [797 NYS2d 465]—

Judgment, Supreme Court, New York County (Richard F. Braun, J.), entered August 2, 2004, which granted the petition to the extent of declaring that New York City Charter § 362 (a) includes the use of city-owned intellectual property, but denied so much of the petition as sought to invalidate a contract between respondents Department of Citywide Administrative Services and Snapple Beverage, which included an agreement between Snapple and respondent Marketing Development

Corporation, unanimously affirmed, without costs. Appeals from order, same court and Justice, also entered August 2, 2004, unanimously dismissed, without costs, as subsumed in the appeals from the judgment.

The Comptroller waived his objections to the failure of proper certification of the contract, pursuant to City Charter § 327. Under City Charter § 328 (a), the Comptroller may refuse to register a contract entered into between the City and another party, thereby blocking its implementation, where there are appropriate grounds to do so. However, the permitted grounds are limited to those contained in section 328 (b). The only ground applicable here is section 328 (b) (ii), where the Comptroller has reason to believe "that a certification required by section three hundred twenty-seven of this chapter has not been made." However, such objection requires the Comptroller to "promptly notify the agency Concession Manager in writing of the determination" (12 RCNY 1-14 [e] [2]). Even absent such a rule, prompt notification could be inferred, as the contract could be implemented 30 days after filing even without the Comptroller's registration, unless he actually has grounds for such objection (City Charter § 328 [a]). Thus, without a notification requirement, and in the absence of any action by the Comptroller, all parties would be left to wonder whether the contract might be implemented by operation of the time limit, or if it might not be implemented due to some ground unexpressed by the Comptroller. The only reasonable reading of this provision is that the Comptroller must give prompt written notice of the grounds for such objection; any other reading would lead to absurd results (*see generally Matter of Long v Adirondack Park Agency*, 76 NY2d 416, 421 [1990]; McKinney's Cons Laws of NY, Book 1, Statutes §§ 144, 145).

The Comptroller's objection to the certifications by the Mayor and Corporation Counsel, contained in his March 18, 2004 letter to the Mayor, challenged the substantive underpinnings of the certifications, namely, the Mayor's failure to submit to the City's Franchise and Concession Review Committee for approval of that part of the Snapple marketing agreement granting a concession for the use of certain of the City's intangible and/or intellectual property, such as use of the City's trademark. This was not a proper objection under section 328 (b) (ii), which only permits the Comptroller to object to the existence or nonexistence of the specifically required certifications, not to look beyond the certifications to inspect the underlying process (*cf.* 9 RCNY 2-12 [a] ["Registration of a contract by the Comptroller shall not constitute an approval of the contract nor an approval

of the process by which the contract was awarded"]). The Charter provision places on the Mayor and Corporation Counsel the onus of examining and certifying the process. Thus, by failing to make a proper written objection, the Comptroller waived this objection, and the court properly declared the Snapple contract valid and able to be implemented.

The court also properly declared that the term "property," as used in the definition of "Concession" pursuant to City Charter § 362 (a), includes such intangibles as intellectual property. The term "property" is unambiguous and without limitation (*see Riley v County of Broome*, 95 NY2d 455, 463 [2000]). While the legislative history of the City Charter and concessions indicates that it has been applied predominantly to real property, the reality is that there is no indication of legislative intent to limit its application. Even the municipal respondents have recognized in their brief that the marketing of the City's intangible property was an attempt to seek revenue from a "nontraditional" source, and was a "new concept." The history of the City's concessions does not reflect a legislative intent to exclude such intangible property from "concessions"; it simply was not considered at the time of enactment of the City Charter. There is no reason now to read such an exclusion into the term "property" in the City Charter provision (*see generally Hudson Riv. Tel. Co. v Watervliet Turnpike & Ry. Co.*, 135 NY 393 [1892]). Concur—Mazzarelli, J.P., Saxe, Marlow, Gonzalez and Sweeny, JJ.